IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAROLYN BLUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv29-CSC |
| ) | (WO) |
| JO ANNE BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

The plaintiff, Carolyn Blue ("Blue"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., alleging that she was unable to work because of a disability.[1] Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. (R. 99).  The ALJ, therefore, denied the plaintiff's claim for disability insurance benefits.  On appeal, the Appeals Council remanded the plaintiff's claim to the ALJ for further proceedings.[2] (R. 124).

---

[1] The plaintiff also applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.  However, no action has been taken on her claim for SSI benefits and it appears from the record that her SSI application remains pending.

[2] The Appeals Council determined that the ALJ did not properly consider the plaintiff's mental impairments and did not properly evaluate the opinions of her treating physicians. (R. 124-126).

After another administrative hearing, the ALJ again concluded that the plaintiff was not under a "disability" as defined in the Social Security Act, and denied her claim for disability insurance benefits. (R. 14). The Appeals Council rejected a subsequent request for review. (R. 7). The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[3]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A. Introduction.**  The plaintiff was 50 years old at the time of the hearing before the ALJ and has a tenth (10th) grade education.  (R. 14).  Her past relevant work experience includes work as a machine operator.  (R. 23.).  Following the hearing, the ALJ concluded that the plaintiff has severe impairments of neck, back and shoulder pain and depression. (*Id.*)  The ALJ concluded that Blue was unable to perform her past relevant work, but, using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework, concluded that there were significant number of jobs in the national economy that she could perform.  (R. 24).  Accordingly, the ALJ concluded that the plaintiff is not disabled.  (*Id.*).

**B.  Plaintiff's Claim.**  The plaintiff presents one issue for the court's review.  As stated by Blue, the issue is whether "[t]he administrative law judge erred in his assessment of treating physician Smith's opinion."  (Pl's Mem. Br. at 15).

### IV. Discussion

The plaintiff complains that the ALJ failed to properly credit her treating physician's August 2002 assessment regarding her ability to work.  On August 21, 2002, Blue presented to Dr. Karen Smith complaining of upper back pain, spasms, and muscle cramps in her left

leg. (R. 437-438). Dr. Smith noted that Blue had decreased range of motion in her back and that she suffered from chronic back pain. (*Id.*) Dr. Smith then completed a "Questionnaire to Physician Regarding Physical and Mental Abilities and Limitations" form, in which she opined that Blue could work no hours during the day. (R. 428)

The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good

5

cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

The ALJ rejected Dr. Smith's opinion, contained in the questionnaire that Blue is unable to work as follows.

> However, at the time of the report, the only complaints that the claimant had were of some right hip pain, and of chest pain on her next visit. As noted above, the chest pain turned out to be non-cardiac and was seemingly attributable to strain of the chest muscles. Since this report was prepared shortly before the claimant's prior hearing and presented to the hearing office in September 2002, it was presumably prepared by Dr. Smith to support the claimant's own allegations that she could stand for no more than 15 minutes and lift no more than five pounds. However, the report conflicts with Dr. Smith's examinations and observations. There is no evidence of an impairment or impairments at that time, which would be causing those kinds of limitations. Therefore, for the same reason that weight cannot be provided

to Dr. Schell's report,[6] controlling weight can also not be afforded to Dr. Smith's report, although it is being considered in arriving at the claimant's residual functional capacity. . . .

(R. 21-22).

A review of the plaintiff's medical evidence, focusing primarily on Dr. Smith's records, demonstrates that the ALJ's discounting of Dr. Smith's August 2002 assessment is supported by substantial evidence. On July 14, 1988, Blue underwent a hemi-laminectomy and diskectomy at L5-S1. (R. 244). She reported doing well and was pleased with the results of the surgery. (R. 240-241). On June 25, 1992, she complained about back and leg pain but x-rays revealed good spinal alignment, no disc space narrowing and good joints. (R. 239). She was treated conservatively. (*Id.*)

X-rays on April 14, 1998, revealed mild disc space narrowing at L5-S1 but a July 6, 1999 x-ray indicated that Blue's lumbar spine was "grossly unremarkable." (R. 295, 297). Although she had mild scoliosis, her disc and hip joint space were normal. (R. 297).

On February 19, 1999, Blue presented to the Pinehurst Orthopaedic Clinic complaining of back pain. (R. 300). X-rays of her spine demonstrated "excellent alignment" and "no disc space narrowing or degenerative disc." (*Id.*). When Blue asked about disability, Dr. Oakley noted that he had "nothing else to offer" her and that he saw "no objective that would limit her ability to work." (*Id.*)

A February 7, 2001, x-ray showed "relatively mild" degenerative changes and mild

---

[6] The ALJ rejected Dr. Schell's report because there was no medical evidence to support his conclusions. (R. 21).

narrowing between C3 and C7.  (R. 335, 341, 353).

Dr. Smith began treating the plaintiff on January 23, 2001, when she complained of swelling on the left side of her neck.  (R. 360).  During her physical examination, Blue displayed full range of motion in her neck and back, and no muscle strain or spasms.  (*Id*.)  Dr. Smith diagnosed cervical spondylosis and recommended medication and further evaluation.  (*Id*.)

On March 21, 2001, Blue returned to Dr. Smith complaining about sinus congestion and drainage.  (R. 358).  She had full range of motion in her back and neck, with no muscle strain or spasms noted.  (*Id*.)  She was directed to follow up with the Chronic Pain Center regarding her chronic back pain.  (*Id*.)  On March 23, 2001, Blue returned to Dr. Smith complaining about back discomfort. (R. 357).  Her muscle aches and spasms were attributed to her cold symptoms.  (*Id*.)

On April 7, 2001, Blue complained to Dr. Smith of "acute onset of back pain."  (R. 356).  A physical examination revealed spasms and tenderness with "slight" decreased range of motion.  (*Id*.)  She was treated with Zanaflex and continued on Vioxx.  (*Id*.)

On April 30, 2001, Blue complained to Dr. Smith about persistent back pain.  While she had full range of motion in her neck, she evinced decreased range of motion in her back with spasms at the lower back. (R. 355).  She was referred to the Chronic Pain Center.  (*Id*.)

Blue underwent physical therapy nine times between March and April 2001. (R. 342-352.)  She reached only 50% of her rehabilitation goals.  (R. 342).  She reported "only

moderate compliance" with her home program, and she was discharged from therapy. (*Id.*)

On May 21, 2001, Blue complained to Dr. Smith about pain in her hand, right hip and leg. (R. 485). She had "slight palpable tenderness" in the lower back region. (*Id.*)

On July 26, 2001, Blue presented to Dr. Smith complaining about leg cramps and back pain. (R. 363). She had decreased range of motion in her lower extremities and spine. (*Id.*) Dr. Smith diagnosed chronic back pain with degenerative joint disease, and prescribed Vioxx and Tylenol # 4. (*Id.*)

On August 21, 2001, Blue complained of acute back spasm. (R. 362). A physical examination indicated decreased range of motion and "some evidence of slight tenderness and discomfort" in her lower back. (*Id.*) No spasms were noted. Dr. Smith prescribed Celebrex and a "short course" of Flexeril. (*Id.*)

On August 31, 2001, the plaintiff returned to Dr. Smith for a follow-up visit. She indicated that her pain was "markedly improved." (R. 361). She complained only of neck pain. (*Id.*) Dr. Smith opined that Blue was suffering from "diffuse osteoarthritis with most prominent symptoms in the neck and back region." (*Id.*) Dr. Smith referred Blue for a physical capacity evaluation "to determine her exact limitations and capabilities." (*Id.*)

Blue underwent a physical work performance evaluation, and on September 11, 2001, evaluator Matthew Meyer reported his findings to Dr. Smith. (R. 397-399). Meyer cautioned that Blue's "overall level of performance is influenced by what [she] was willing to do, rather than her maximum safe ability." (R. 397). Meyer noted that

> [d]ue to the extent of self-limiting behavior on the endurance tasks of the test, it is difficult to predict whether [Blue] can sustain the Sedentary level of work for an 8-hour day. It may be reasonable to allow her to work at the Sedentary level for a 02:35 (HH:MM) day, ramping up to an 8-hour day as tolerated.

(*Id.*) Nonetheless, Meyer opined that Blue could sit "frequently" and stand "occasionally." (R. 399).

On October 15, 2001, the plaintiff presented to Dr. Smith complaining of a cyst in her left breast. (R. 448). Although she also complained about right shoulder pain, she did not complain of back or neck pain. (*Id.*) In fact, the physical examination revealed a full range of motion in her neck and spine with no muscle spasm or strain present. (*Id.*)

On October 25, 2001, Blue complained of persistent back pain. (R. 447). Blue was distraught over the denial of her disability claim. (*Id.*) On October 31, 2001, Blue complained of "some slight back discomfort." (R. 446). While she had palpable discomfort, she had full range of motion at the "cervical, thoracic and lumbosacral areas." (*Id.*)

On December 11, 2001, Blue reported back spasms as a result of being unable to get her medication. (R. 445). Dr. Smith provided her a refill of her medication as well as some samples. (*Id.*) On January 21, 2002, Dr. Smith changed Blue's medication to Celebrex and filled the prescription for her. (R. 444).

On May 3, 2002, Dr. Smith noted that Blue had a back spasm and slight decrease in range of motion. (R. 442). On May 21, 2002, Blue had full range of motion at the "cervical, thoracic and lumbosacral areas." (R. 441). On June 13, 2002, Dr. Smith again noted that Blue had a full range of motion in her neck and spine. (R. 440).

10

On July 9, 2002, Dr. Smith noted that Blue had "[p]alpable discomfort at the L5-S1 region with significant amount of decreased [range of motion.]" (R. 439). She prescribed Celebrex. (*Id*.)

On August 21, 2002, the plaintiff complained to Dr. Smith of back pain and leg spasms. (R. 437-438). Blue indicated that the medication was only slightly effective. (R. 437). On August 23, 2002, Dr. Smith completed the functional limitations questionnaire indicating that Blue could not work any hours. (R. 428).

Dr. Smith does not explain the basis of her conclusion that Blue cannot work and the medical evidence in the record does not support her opinion. Dr. Smith has consistently treated the plaintiff conservatively with medication. Although Blue was referred to physical therapy, she was only moderately compliant and withdrew. She self-discontinued treatment at the pain clinic. X-rays have repeatedly demonstrated only mild degenerative changes.[7] No other physician has opined that the plaintiff is completely disabled due to her pain. Although the plaintiff complained on numerous occasions about back and neck pain, the medical records do not provide objective support for Dr. Smith's conclusion that the plaintiff can work no hours in a day. Dr. Smith does not refer to any medical records, tests or x-rays to support her opinions about the plaintiff's disability. After conducting an independent review of the record, the court concludes that Dr. Smith's August 2002 opinion is not supported by the medical evidence of record and the ALJ's rejection of her assessment is

---

[7] An x-ray in September 2003, following a motor vehicle accident, also indicated only mild degenerative changes in Blue's spine. (R. 542-543).

11

supported by substantial evidence.[8] This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. CONCLUSION

The court has carefully and independently reviewed the record, and concludes that the ALJ did not err as a matter of law in concluding that the plaintiff is not disabled and substantial evidence supports that determination.

A separate order will issue.

Done this 7th day of August, 2006.

                                              /s/Charles S. Coody
                                              CHARLES S. COODY
                                              CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] Although 20 C.F.R. § 416.927(d)(2) provides that the opinion of a treating source is generally given more weight, the ALJ is not automatically obligated to accept an opinion which is inconsistent with her own records and the objective medical evidence in the record.